UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
IN RE:

PHILIP S BACCARELLA JR.                    Case No.: 23-74140-las
                                           CHAPTER 13

                        Debtor(s)
------------------------------------X

NOTICE OF HEARING ON January 9, 2024 AT 10 AM
SEEKING ORDER AVOIDING MORTGAGE LIEN HELD BY CREDITOR
CITIMORTGAGE, INC. AND RECLASSIFYING CLAIM FILED BY THIS CREDITOR

PLEASE TAKE NOTICE that a hearing before the Honorable Louis A. Scarcella, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York, 290 Federal Plaza, Room 970, Central Islip, New York 11722 shall be held on January 9, 2024 at 10 AM on the motion filed by the debtor, Philip S Baccarella Jr., seeking the entry of an Order (a) pursuant to 11 U.S.C. Sections 506(a) and 506(d), the secured debt owed to creditor Citimortgage, Inc. (hereinafter "CITI") as may be set forth by any proof of claim filed by or on behalf of this creditor, shall be deemed wholly unsecured; (b) pursuant to 11 U.S.C. Section 506(d), the lien relating to such claim is void; and (c) pursuant to 11 U.S.C. Sections 1322(b)(1) and 1322(b)(5), any proof of claim filed by or on behalf of this creditor, relating to this debt shall be allowed as a non-priority general unsecured claim, and granting such other relief as this Court deems just (the "Motion").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the motion must be in writing and filed with the Bankruptcy Court by January 2, 2024 (the "Objection Deadline") through the Court's

electronic filing system. Instructions for electronically filing an objection can be found at www.nyeb.uscourts.gov.  A copy of the objection must also be mailed, so as to be received by the Objection Deadline, to Richard S. Feinsilver, Esq., One Old Country Road, Suite 347, Carle Place, New York 11514.

PLEASE TAKE FURTHER NOTICE that the hearing on the motion may be adjourned without notice other than an announcement in open Court.

Dated: Carle Place, New York
       November 21, 2023        s/Richard S. Feinsilver
                                _____
                                RICHARD S. FEINSILVER
                                Attorney for Debtor
                                One Old Country Road, Suite 347
                                Carle Place, New York 11514
                                (516) 873-6330

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
IN RE:

PHILIP S. BACCARELLA JR.                    Case No.:23-74140 -las

                                            CHAPTER 13

                    Debtor(s)               AFFIRMATION IN SUPPORT
--------------------------------------------------------------X

      RICHARD S. FEINSILVER, an attorney duly admitted to practice before this Court,
affirms the following under the penalty of perjury:


      1. I am the attorney for the above captioned debtor, and I am fully familiar with the facts
and circumstances surrounding this case.


      2. I make this affirmation in support of the Debtor's application for the entry of an Order,
declaring that: (a) pursuant to 11 U.S.C. Sections 506(a) and 506(d), the secured debt owed to
creditor CITIMORTGAGE, INC., NA (hereinafter "Citi") as set forth by any proof of claim filed
by or on behalf of this creditor, or its servicing agent, shall be deemed wholly unsecured; (b)
pursuant to 11 U.S.C. Section 506(d), the lien relating to such claim is void; and [c] pursuant to
11 U.S.C. Sections 1322(b)(1) and 1322(b)(5), any proof of claim filed by or on behalf of this
creditor, relating to this debt shall be allowed as a non-priority general unsecured claim.


      3. The Debtor filed a petition for relief under Chapter 13 on November 6 , 2023.


      4. The Debtor is an individual who resides at 63 Seward Drive, Dix Hills, New York.
The Debtor holds title in fee to this property..


      5. Upon information and belief, Citi is a secured creditor in the underlying Chapter 13
case, and upon information and belief, has based its secured status upon being the
holder/servicing agent of a second mortgage made by the debtor, duly filed with the Clerk of the

County of Suffolk, State of New York. Upon information and belief, the debtor executed a mortgage and mortgage note in the amount of $158,000.00 in favor of Citi, or its predecessor in interest. The present balance on this obligation is $158,000.00. (Exhibit A)

6. Upon information and belief, Citi has not yet appeared in the underlying Chapter 13 case.

7. There is presently a first mortgage lien of record against the debtor's homestead, held and/or serviced by Shellpoint Mortgage, with an outstanding balance of approximately $824,000.00, as of the filing date. (Exhibit B)

8. As of October 27, 2023, the real. property was. appraised at a value of $618,000.00. A copy of said appraisal is annexed hereto as Exhibit C.

9. As the total amount due on the first mortgage lien against the real property is at least $824,000.00, while the appraised value of the property is $618,000.00. As such, there is no equity in the property to secure the alleged lien filed by Citi, and therefore said claim is fully unsecured.

10. Pursuant to §506(a) of the Bankruptcy Code, a claim is allowed as secured only to the extent of the value of property upon which the lien is fixed. The remainder of the claim is considered unsecured.

11. Accordingly, pursuant to §506(a) of the Bankruptcy Code and Rule 3012 of the Federal Rules of Bankruptcy Procedure, the secured claim of Citi is wholly unsecured because the senior secured lien exceed the appraised value of the property. Accordingly, the full amount of the second mortgage held by Citi cannot be allowed as secured and must be deemed fully unsecured pursuant to 11 U.S.C. Section 1322(b)(1).

12.  In addition to the foregoing, pursuant to §506(d) of the Bankruptcy Code, to the extent a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless such claim is disallowed under §506(b) (5) or §502(e) of the Bankruptcy Code; or such claim is not an allowed secured claim due only to the failure of the entity to file a Proof of Claim under section 501.

13. The secured status of any claim filed by Citi should be disallowed in its entirety. Therefore, the lien held by Citi must, pursuant to §506(d), be considered null and void.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order, pursuant to 11 U.S.C. Sections 506(a), 506(d), 1322(b)(1) and 1322(b)(5) declaring that: (a) the claim held by CITIMORTGAGE, INC., NA, secured by a lien on the debtors' property located at 63 Seward Drive, Dix Hills, New York, be deemed a wholly unsecured claim; (b)upon the filing by the Chapter 13 Trustee of a Certification of Completed Chapter 13 Plan, the security interest claimed by CITIMORTGAGE, INC., NA as evidenced by any mortgage it has duly recorded with the Clerk of the County of Suffolk, shall be and the same is deemed null, void, avoided, released and discharged of record; and [c] the Court grant such other, further and different relief as it deems just, proper and equitable.

Dated: Carle Place, New York
      November 20, 2023

                    s/Richard S. Feinsilver

                    RICHARD S. FEINSILVER, ESQ.
                    Attorney for Debtor

EXHIBIT A

Debtor 1 **PHILIP S BACCARELLA, JR**

Debtor 2 _____
(Spouse if filing)

EASTERN

NEW YORK (Central Islip)

United States Bankruptcy Court for the: _____ District of _____
(State)

Case number **16-73814**

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | CitiMortgage, Inc. <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes.  From whom? _____ |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent?  (if different) |
|---|---|
| CitiMortgage, Inc. | CitiMortgage, Inc. |
| Name | Name |
| P.O. Box 6030 | P.O. Box 688971 |
| Number       Street | Number       Street |
| Sioux Falls, SD 57117-6030 | Des Moines, IA 50368-8971 |
| City       State       Zip Code | City       State       Zip Code |
| Contact phone (866)613-5636 | Contact phone (866)613-5636 |
| Contact email  CitiPOC1@citi.com; <br> CitiAssist4Trustee1@citi.com | Contact email  CitiPOC1@citi.com; <br> CitiAssist4Trustee1@citi.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ – _

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____ <br> MM  /  DD  /  YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __0138__ __ __ __ __ __ __ __ .

**7. How much is this claim?** $ __158,170.15__

Does this amount include interest or other charges?

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

__Mortgage Loan__

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real Estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                               $ _____

Amount of the claim that is secured:   $ _____

Amount of the claim that is unsecured: $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $ _____

Annual Interest Rate (when case was filed)          __%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_____) that applies.

$ _____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:** **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am the guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   11/16/2016
                   MM  /  DD  /  YYYY

/s/Liliana Sandoval
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Liliana Sandoval
            First name          Middle name          Last name

Title       Bankruptcy Specialist

Company     CitiMortgage, Inc.
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     P.O. Box 6030
            Number    Street
            Sioux Falls, SD 57117-6030
            City                State    Zip Code

Contact phone   (866)613-5636          Email   CitiPOC1@citi.com; CitiAssist4Trustee1@citi.com

---

# Exhibit 'A-1'

Case No.: 16-73814

Debtors:   PHILIP S BACCARELLA, JR

Date: 11/16/2016

Address:  63 SEWARD DR

          DIX HILLS, NY  11746

Loan No.: 0138

On filing petition 08/20/16 debtor(s) owed claimant total debt of  $158,170.15.


The Total Debt owed at petition:

| | |
|---|---:|
| Principal Balance | 44,937.53 |
| Late Charge | 3.10 |
| Deferred Uncollected Interest | 2,110.58 |
| Deferred Principal Balance | 111,118.94 |
| **Total Debt:** | **158,170.15** |


The above figures represent the amount owed at the time of filing and do not reflect payments received after the date of the filing of the Bankruptcy.

EXHIBIT B



**shellpoint**
A DIVISION OF newrez

**DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS**
P.O. Box 619063 • Dallas, TX 75261-9063

1-811-27524-0041945-005-1-000-010-000-000



PHILIP BACCARELLA
63 SEWARD DR
DIX HILLS NY 11746-7907

# MORTGAGE STATEMENT
Statement Date: 06/17/2023

| | |
|---|---|
| **Account Number** | 859 |
| **Next Due Date** | **07/01/2023** |
| **Amount Due** | **$34,931.98** |
| *If payment is received after 07/16/2023, $42.70 late fee may be assessed.* | |

| | |
|---|---|
| Phone: | 866-316-4706 |
| Website: | www.shellpointmtg.com |

## Explanation of Amount Due

| | |
|---|---|
| Principal | $997.40 |
| Interest | $1,137.52 |
| Escrow (Taxes and Insurance) | $1,370.26 |
| **Regular Monthly Payment** | **$3,505.18** |
| Total Fees and Charges | $30.00 |
| Overdue Payment | $31,396.80 |
| **Total Amount Due** | *(C)* **$34,931.98** |

## Account Information

| | | |
|---|---|---|
| Outstanding Principal | *(A)* | $691,412.66 |
| Deferred Balance* | *(B)* | $82,770.00 |
| Interest Rate | | 2.0000% |
| Prepayment Penalty | | None |
| Property Address: | 63 SEWARD DR | |
| | DIX HILLS NY 11746 | |
| Contractual Due Date: | | October 1, 2022 |
| Current Escrow Balance: | | -$12,140.14 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## Transaction Activity (05/18/2023 - 06/16/2023)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 06/13/2023 | Property Inspection Disbursement | $30.00 | $0.00 |

*A+B+C = 809,114.64* (handwritten)

## Important Messages

**\*Partial Payments:** Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply those funds to your mortgage.

## Additional Messages

**Affected by COVID-19?** Assistance may be available. We offer relief options, such as a forbearance - a temporary suspension of payments, and payment deferment. Visit our website www.shellpointmtg.com or call us at 866-825-2174 to see if you qualify.

For questions regarding the servicing of your loan, please contact us at 866-316-4706 Monday-Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM.

Federal law requires us to tell you how we collect, share, and protect your personal information. Our Privacy Policy has not changed. You can review our policy and practices with respect to your personal information at www.shellpointmtg.com or request a copy to be mailed to you by calling us at 866-316-4706.

## \*\*Delinquency Notice\*\*

**You are late on your loan payments.** Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of 06/17/2023, you are 259 days delinquent on your loan.

**Recent Account History**
o Payment due 01/01/23: unpaid balance of $13,996.96
o Payment due 02/01/23: unpaid balance of $3,491.84
o Payment due 03/01/23: unpaid balance of $3,449.14
o Payment due 04/01/23: unpaid balance of $3,491.84
o Payment due 05/01/23: unpaid balance of $3,491.84
o Payment due 06/01/23: unpaid balance of $3,505.18
o Payment due 07/01/23: current payment due

o **Total: $34,931.98 due. You must pay this amount to bring your loan current.**

**If You Are Experiencing Financial Difficulty:** See back for information about mortgage counseling or assistance.

**For information about your payments, total amount due, and any additional payment history, see reverse side.**

Detach and return with payment

EXHIBIT C

**Philip Baccarella**

File Number: 63 SEWARD DR 1

In accordance with your request, I have appraised the real property at:

**63 SEWARD DR**
**DIX HILLS, NY 11746**

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   **October 27, 2023**                                    is:

**$618,000**
**Six Hundred Eighteen Thousand  Dollars**

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

**OLEG SORKIN**

# Uniform Residential Appraisal Report
File No. **63 SEWARD DR 1**

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address **63 SEWARD DR** | City **DIX HILLS** State **NY** Zip Code **11746** |

Borrower **n/a**  Owner of Public Record **Philip Baccarella**  County **SUFFOLK**

Legal Description **SECTION: 400; BLOCK: 264; LOT: 2**

Assessor's Parcel # **040026400020043008**  Tax Year **2023**  R.E. Taxes $ **13,379**

Neighborhood Name **DIX HILLS**  Map Reference **HGSTM  MAP**  Census Tract **1122.11**

Occupant [X] Owner [ ] Tenant [ ] Vacant  Special Assessments $ **0**  [ ] PUD  HOA $ **0.00** [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) **ESTIMATE OF MARKET VALUE**

Lender/Client **Philip Baccarella**  Address

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s).  **-**

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $  Date of Contract  Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | | Property Values | [ ] Increasing [X] Stable [ ] Declining | | PRICE | AGE | One-Unit | 40 % |
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply | [ ] Shortage [X] In Balance [ ] Over Supply | | $(000) | (yrs) | 2-4 Unit | 10 % |
| Growth | [ ] Rapid [X] Stable [ ] Slow | | Marketing Time | [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | 200 Low | 5 | Multi-Family | 5 % |
| Neighborhood Boundaries  **see map** | | | | | | 1,000 High | 160 | Commercial | 10 % |
| | | | | | | 618 Pred. | 80 | Other Addend | 35 % |

Neighborhood Description **VIABLE NEIGHBORHOOD CONVENIENT TO ALL NECESSARY SUPPORTING FACILITIES AND AMENITIES SUCH AS EMPLOYMENT, TRANSPORTATION, SHOPPING, WORSHIP, RECREATION, ETC.  NO ADVERSE AREA FACTORS AFFECTING MARKETABILITY ARE KNOWN TO THE APPRAISER.  AVERAGE RESIDENTIAL USE AREA PRIMARILY IMPROVED WITH VARIOUS AGE RESIDENTIAL DWELLINGS.**

Market Conditions (including support for the above conclusions) **PREDOMINANT PRICE OF SIMILAR UNITS IN AVARAGE OR GOOD CONDITION  IN THIS NEIGHBORHOOD IS APPROXIMATELY $615,000 (+/- 5%.)  PLEASE SEE ADDENDUM FOR COMMENTS.**

| | | | |
|---|---|---|---|
| Dimensions **0.46 ac** | Area **20038 sf** | Shape **REGULAR** | View **N;Res;** |

Specific Zoning Classification **210**  Zoning Description **RESIDENTIAL**

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | **CITY** | Street **ASPHALT** | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | **NYC** | Alley **none** | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone **X**  FEMA Map # **3604970610G**  FEMA Map Date **09/05/2007**

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe.

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab [ ] Crawl Space | Foundation Walls **Concrete/avg** | Floors **Wood/avg** |
| # of Stories **2** | [X] Full Basement [ ] Partial Basement | Exterior Walls **Frame/wood/avg** | Walls **Drywall/avg** |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area **280** sq. ft. | Roof Surface **AsphaltShingle/avg** | Trim/Finish **Wood/avg** |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish **0** % | Gutters & Downspouts **Aluminum/avg** | Bath Floor **Ceramic/avg** |
| Design (Style) **DT2;Split** | [X] Outside Entry/Exit [ ] Sump Pump | Window Type **Dhng/csmnt/avg** | Bath Wainscot **Ceramic/avg** |
| Year Built **1959** | Evidence of [ ] Infestation | Storm Sash/Insulated **Double pane/avg** | Car Storage [ ] None |
| Effective Age (Yrs) **10** | [ ] Dampness [ ] Settlement | Screens **Mesh/avg** | [X] Driveway # of Cars **2** |
| Attic [X] None | Heating [ ] FWA [X] HWBB [ ] Radiant | Amenities | Driveway Surface **paved** |
| [ ] Drop Stair [ ] Stairs | [ ] Other  Fuel **gas** | Fireplace(s) # **0** [X] Fence **METAL** | [X] Garage # of Cars **2** |
| [ ] Floor [ ] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck **porch** [X] Porch **porch** | [ ] Carport # of Cars **0** |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other **none** | Pool **none** [ ] Other **none** | [ ] Att. [ ] Det. [X] Built-in |
| Appliances [ ] Refrigerator [ ] Range/Oven [ ] Dishwasher [ ] Disposal [ ] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | |

Finished area above grade contains:  **5** Rooms  **2** Bedrooms  **2.1** Bath(s)  **2,247** Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  **THERMOPANE WINDOWS**

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  **C3;Kitchen-remodeled-six to ten years ago;Bathrooms-remodeled-six to ten years ago;overall condition is average. (per prior inspection on 08/17/2020).  No new inspection was performed**

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe.

ValueSafe Appraisals, Inc.

# Uniform Residential Appraisal Report

File No. 63 SEWARD DR 1

| | | | | |
|---|---|---|---|---|
| There are **5** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **550,000** to $ **675,000** | | | | |
| There are **9** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **550,000** to $ **725,000** | | | | |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| | **63 SEWARD DR** | **6 PINE HILL LN** | | **26 SEWARD DR** | | **2 REGINA AVE** | |
| Address | **DIX HILLS, NY 11746** | **DIX HILLS, NY 11746** | | **DIX HILLS, NY 11746** | | **DIX HILLS, NY 11746** | |
| Proximity to Subject | | **0.16 miles NE** | | **0.16 miles NE** | | **0.16 miles NE** | |
| Sale Price | $ | | 575,100 | | 585,000 | | 675,000 |
| Sale Price/Gross Liv. Area | $ **0.00** sq. ft. | $ **250.04** sq. ft. | | $ **390.00** sq. ft. | | $ **397.06** sq. ft. | |
| Data Source(s) | | StrMls #0;DOM Unk | | StrMls #3417234;DOM Unk | | StrMls #0;DOM Unk | |
| Verification Source(s) | | Signature Premier Properties | | Signature Premier Properties | | Signature Premier Properties | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s06/23;c04/23 | | s11/22;c09/22 | | s01/23;c12/22 | |
| Location | A;BsyRd; | N;Res; | -17,000 | A;BsyRd; | | A;BsyRd; | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 20038 sf | 18731 sf | 6,500 | 1.39 ac | -100,000 | 20038 sf | |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT2;Split | DT2;Split | | DT1;Ranch | 0 | DT2;Split | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q3 | -30,000 |
| Actual Age | 60 | 60 | | 60 | | 60 | |
| Condition | C3 | C4 | 57,500 | C4 | 58,500 | C2 | -67,500 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 5   2   2.1 | 5   2   2.1 | | 5   2   2.1 | | 5   2   2.1 | |
| Gross Living Area 75 | 2,247 sq. ft. | 2,300 sq. ft. | -3,975 | 1,500 sq. ft. | 56,025 | 1,700 sq. ft. | 41,025 |
| Basement & Finished | 280sf0sfwu | 280sf0sfwu | | 280sf0sfwu | | 280sf0sfwu | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | 1 family/standard | 1 family/standard | | 1 family/standard | | 1 family/standard | |
| Heating/Cooling | HWBB C/Air | HWBB C/Air | | HWBB C/Air | | HWBB C/Air | |
| Energy Efficient Items | Windows | Windows | | Windows | | Windows | |
| Garage/Carport | 2gbl2dw | 2gbl2dw | | 2gbl2dw | | 2gbl2dw | |
| Porch/Patio/Deck | Patio, porch | Patio, porch | | Patio, porch | | Patio, porch | |
| pool | none | none | | none | | none | |
| cost to cure | none | none | | none | | none | |
| other | none | none | | none | | none | |
| Net Adjustment (Total) | | [X] +  [ ] - | $  43,025 | [X] +  [ ] - | $  14,525 | [ ] +  [X] - | $  56,475 |
| Adjusted Sale Price | | Net Adj.  7.5% | | Net Adj.  2.5% | | Net Adj.  -8.4% | |
| of Comparables | | Gross Adj.  14.8% | $  618,125 | Gross Adj.  36.7% | $  599,525 | Gross Adj.  20.5% | $  618,525 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) GEODATA, REALIST
My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) GEODATA, REALIST
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | GEODATA, REALIST | GEODATA, REALIST | GEODATA, REALIST | GEODATA, REALIST |
| Effective Date of Data Source(s) | 10/27/2023 | 10/27/2023 | 10/27/2023 | 10/27/2023 |

Analysis of prior sale or transfer history of the subject property and comparable sales  THE SELECTED SALES HAVE NOT BEEN SOLD WITHIN THE PAST YEAR NOR HAS THE SUBJECT BEEN SOLD IN THE PAST THREE YEARS OTHER THAN NOTED IN THE ADJUSTMENT GRID.

Summary of Sales Comparison Approach.  Due to low turn-over and long-term residency in the subject immediate neighborhood, it was necessary to exceed the following suggested guidelines: more than 5 year actual age differences, 10% gross adjustments, 10% gla and/or site area variances, use comp(s) sold over 3 months ago.

Indicated Value by Sales Comparison Approach $  618,000
Indicated Value by: Sales Comparison Approach $618,000    Cost Approach (if developed) $ 623,200    Income Approach (if developed) $ 0
COMPS 1, 3 WERE GIVEN THE MOST WEIGHT DUE TO LOW NET AND/OR GROSS ADJUSTMENTS, CLOSE PROXIMITY, ETC.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 618,000 as of  10/27/2023  , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005           UAD Version 9/2011

Produced using ACI software, 800.234.8727 www.aciweb.com
Page 2 of 6

Fannie Mae Form 1004 March 2005
1004_05UAD 121102015

Appraisal Report

**ADDITIONAL COMMENTS**

---

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) **Allocation method was used: lot values in this area range from 30 to 35% of total property value, The site or land value of the subject property is $180,000 or 30% of the total property value.**

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | = $ | 180,000 |
|---|---|---|---|---|---|---|
| Source of cost data **MARSHALL & SWIFT COST HANDBOOK** | Dwelling | **2,247** Sq. Ft. @ $ | **230.00** | = $ | | 516,810 |
| Quality rating from cost service **avg**     Effective date of cost data **10/27/2023** | **Bsmt: 280** | Sq. Ft. @ $ | **42.00** | = $ | | 11,760 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | **PATIO, DECK** | | | | | 20,000 |
| **SEE ATTACHED BUILDING SKETCH FOR BUILDING CALCULATIONS.** | Garage/Carport | **380** Sq. Ft. @ $ | **15.00** | = $ | | 5,700 |
| **THE AGE LIFE METHOD WAS USED IN ESTIMATING DEPRECIATION.** | Total Estimate of Cost-New | | | = $ | | 554,270 |
| **MARSHALL AND SWIFT COST MANUAL USED FOR RCN. HIGH LAND** | Less **50** | Physical | Functional | External | | |
| **TO VALUE RATIO IS COMMON FOR THIS AREA OF SUFFOLK COUNTY** | Depreciation **$110,854** | $0 | $10,224 | = $ ( | | 121,078) |
| **AND WILL NOT EFFECT VALUE.** | Depreciated Cost of Improvements | | | = $ | | 433,192 |
| | "As-is" Value of Site Improvements | | | = $ | | 10,000 |
| Estimated Remaining Economic Life (HUD and VA only) **40** Years | INDICATED VALUE BY COST APPROACH | | | = $ | | 623,200 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD? ☐ Yes ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005     UAD Version 9/2011     Produced using ACI software, 800.234.8727 www.aciweb.com     Fannie Mae Form 1004 March 2005

Page 3 of 6     1004_05UAD 12182015

# Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

# Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

# Uniform Residential Appraisal Report

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature *Oleg Sonrvbr* | Signature _____ |
| Name OLEG SORKIN | Name _____ |
| Company Name ValueSafe Appraisals Inc. | Company Name _____ |
| Company Address 2310 LEGION ST | Company Address _____ |
| BROOKLBELLMORE, NY 11710YN, NY 11234 | |
| Telephone Number 917-674-7555 | Telephone Number _____ |
| Email Address ValueSafeAppraisals@gmail.com | Email Address _____ |
| Date of Signature and Report 10/27/2023 | Date of Signature _____ |
| Effective Date of Appraisal 10/27/2023 | State Certification # _____ |
| State Certification # 45000049269 | or State License # _____ |
| or State License # _____ | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State NY | |
| Expiration Date of Certification or License 10/13/2024 | |

ADDRESS OF PROPERTY APPRAISED
63 SEWARD DR
DIX HILLS, NY 11746

APPRAISED VALUE OF SUBJECT PROPERTY $ 618,000

LENDER/CLIENT
Name NO AMC
Company Name Philip Baccarella
Company Address _____
Email Address _____

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
  Date of Inspection _____
☐ Did inspect interior and exterior of subject property
  Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
  Date of Inspection _____

Freddie Mac Form 70 March 2005     UAD Version 9/2011     Produced using ACI software, 800.234.8727 www.aciweb.com     Fannie Mae Form 1004 March 2005
Page 6 of 6     1004_05UAD 12192015

Appraisal Report

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

                                                                    Case# 23-74140-las

PHILIP S BACCARELLA JR.                                             AFFIRMATION OF SERVICE

                              Debtors

-----------------------------------------------------------------X

       The undersigned attorney, duly admitted to practice before this Court, affirms the
following to be true under the penalties of perjury:

       That he is the attorney for the debtor in the instant case.

       That on the 21st day of November 2023, your affiant served a true copy of the Notice of
Motion and supporting documents with Exhibits in this action upon:

Michael Macco Esq 2950 Expressway Drive S, S 109, Islandia NY 11749
Citimortgage Bankruptcy, Box 790040, St Louis MO 63179
CITIMORTGAGE, INC., Box 6243, Sioux Falls SD 57117
Citimortgage Inc Box 6030, Sioux Falls SD 57117-6030
Citimortgage, Inc., 14700 Citicorp Drive, MC 0251, Hagerstown MD 21742
Jane Fraser, Chair, Citimortgage, 1000 Technology Drive O'Fallon MO 63368
Jane Fraser, Chair, Citimortgage, 4740 121st Street, Urbandale IA 63368-2240
Sunil Garg, CEO, Citimortgage, 1000 Technology Drive O'Fallon MO 63368
Sunil Garg, CEO, Citimortgage, 4740 121st Street, Urbandale IA 63368-2240

the address(es) designated by said attorney and party for that purpose by depositing a true copy of
same to each attorney and party, enclosed in a post paid properly addressed wrapper, in an
official depository, VIA FIRST CLASS MAIL, under the exclusive care and custody of the
United States Postal Service within the State of New York.

3. That on the 21st day of November 2023, your affiant served a true copy of the Notice of Motion and supporting documents with Exhibits in this action upon:
Sunil Garg  CEO, Citimortgage, 1000 Technology Drive O'Fallon MO 63368
Sunil Garg CEO, Citimortgage, 4740 121st Street, Urbandale IA 63368-2240

the address(es) designated by said attorney and party for that purpose by depositing a true copy of same to each attorney and party, enclosed in a post paid properly addressed wrapper, in an official depository, VIA CERTIFIED FIRST CLASS MAIL, RETURN RECEIPT REQUESTED, under the exclusive care and custody of the United States Postal Service within the State of New York.

Dated: November 21, 2023
        Carle Place, New York

                                s/Richard S. Feinsilver
                                RICHARD S. FEINSILVER